## UNITED STATES DISTRICT COURT
## FOR THE NORTHER DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| **KADESHA MEANS,** | } |
| Plaintiff, | } |
| | } Case No.: 2:17-cv-0283-RDP |
| v. | } |
| **NANCY A. BERRYHILL,** | } |
| **Acting Commissioner of Social Security,** | } |
| Defendant. | } |

### MEMORANDUM OF DECISION

Plaintiff Kadesha Means ("Plaintiff" or "Means") brings this action pursuant to Section 405(g) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security (the "Commissioner") determining that, as of June 1, 2014, she no longer qualifies for disability benefits under the Act. *See* 42 U.S.C. §§405(g) and 1383(c). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be reversed and remanded.

**I.      Proceedings Below**

In October 2000, the Social Security Administration ("SSA") issued a fully favorable decision finding Plaintiff disabled. (Tr. 27). The disability was the result of a gunshot wound to the pelvis and back[1] which rendered Plaintiff unable to sustain work-related activities. (Tr. 29, 94, 285, 349). The gunshot wound caused injury to the bowels and bladder requiring use of a colostomy bag and diapers as well as fracture of the lower lumbar vertebrae and sacrum where the bullet exited requiring open reduction and internal fixation. (Tr. 349).

---

[1] When Plaintiff was approximately 23 years old, she was at home and an unidentified bullet came through her window and hit her in the pelvis on the right side. (Tr. 285).

Plaintiff's disability was subsequently determined to have continued in a decision dated September 13, 2004. (Tr. 27). This is the comparison point decision ("CPD")[2] for the 2014 claim before this court.

A second continuing disability review on June 27, 2014 found Plaintiff was no longer disabled and benefits were discontinued effective August 2014. (Tr. 90). Plaintiff requested reconsideration of that decision. (Tr. 99). After an in-person disability hearing, the SSA concluded Plaintiff was able to work and no longer eligible for SSI or DIB payments. (Tr. 99, 106, 118). Plaintiff requested a hearing before an ALJ. (Tr. 134, 149).

At the ALJ hearing on July 29, 2015, Plaintiff did not have representation, (Tr. 82–83), although the ALJ informed Plaintiff of her right to it. (Tr. 83). The hearing was postponed and rescheduled, yet at the rescheduled hearing Plaintiff remained unrepresented. (Tr. 59, 84, 182). The ALJ then rendered a decision that Plaintiff was no longer disabled. (Tr. 24).

On October 21, 2015 Plaintiff requested review of the cessation of benefits decision, and on November 25, 2015, Plaintiff's counsel requested review of the decision. (Tr. 16, 22, 275). On January 31, 2017, the Appeals Council denied Plaintiff's request for review. (Tr. 1). Following that denial, the final decision of the Commissioner became a proper subject for this court's appellate review. *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986) (finding the ALJ decision final for purposes of judicial review when the Appeals Council denied review).

---

[2] The comparison point decision is the most recent prior favorable medical decision which determined that claimant was disabled. 20 CFR 404.1594(b)(7).

## II. Relevant Facts

In 2004 the SSA completed a review of Plaintiff's condition for continuation of disability benefits.[3] (Tr. 30, 285). Dr. Naveed Vehra examined Plaintiff with chief complaints of right low back pain with right leg spasms. (Tr. 285). At that time, Plaintiff reported that she experienced severe pain in the low back radiating to the right foot and toe (lasting 2-3 hours); she was weak in the right leg as compared to the left side; she was incontinent of her bowels and wore a colostomy bag; pain increased when walking long distances or standing for long periods of time; she was able to do some mild housework, including some dishes and cooking but could not do any mopping, vacuuming, or yard work; and she took over the counter pain medications. (Tr. 286). Dr. Vehra noted that Plaintiff had "difficulty in getting off and on the examination table and taking [her] shoes off," "she walked down the hall with a slight limp on the right side," and had "marked difficulty in tandem, heel, and toe walking." (Tr. 287). Dr. Vehra concluded that "the number of hours that the claimant could be expected to stand and walk based on the history and physical findings, is less than 1-2 hours because of severe limitations and pain in the lower back and right leg." (Tr. 289).

For purposes of the current decision under review, medical records date back to 2012. In February of that year, Plaintiff was seen at the Urology Clinic for follow up of a kidney stone and diagnosed with spinal cord injury and neurogenic bladder. (Tr. 369). Notes from the visit indicate that she "was initially a paraplegic but regained ambulatory function in 2001. She wear[s] adult briefs and will get an urge to void but has almost [no] time until she will empty into her diaper. She goes thru [sic] 4-5 of these a day." (Tr. 369). Plaintiff was directed to follow up with Urology in one year. (Tr. 371).

---

[3] Neither the decision of the ALJ from 2004 nor the medical records relating to the injuries sustained in 2000 are in the record before this court. (Pl. Brief, Doc. #10 at 5).

On February 13, 2013 Plaintiff was again seen at the Urology Clinic for a follow up visit and again she was diagnosed with spinal cord injury and neurogenic bladder. (Tr. 373). Notes from the visit indicate that Plaintiff "manages her bladder with strain assisted voiding and spontaneous emptying. She goes through about 6 adult briefs per day. She is interested in colostomy reversal which was done at the time of her injury." (Tr. 373). Plaintiff was noted to take over the counter medications for pain relief and Lyrica at bedtime. (Tr. 374).

On April 30, 2013, Plaintiff followed-up with Dr. Keith Lloyd at UAB Health System. (Tr. 291). Notes indicate that "she initially did CIC [clean intermittent catherization] for bladder management but has since gone back to strain assisted voiding. Her upper tracts have remained stable and she empties well but has significant leakage going through 6 adult diapers per day. She is interested in bladder management that will keep her more dry." (Tr. 291). A micturition study revealed some leakage with spontaneous contractions. (Tr. 292). Plaintiff was prescribed Ditropan and was referred to colorectal surgery for discussion of colostomy takedown. (Tr. 292). Plaintiff was directed to return to the clinic in one year. (Tr. 292).

In October 2013, Plaintiff presented to the Emergency Department at Baptist Medical Center Princeton with a sharp pain in the lower abdomen and could barely walk. (Tr. 304, 309). Dr. Jarvis Patton, Jr. admitted Plaintiff for a urinary tract infection. (Tr. 309). She was treated and given a morphine injection for abdominal pain. (Tr. 313).

For the second continuing disability review, Plaintiff was examined by Dr. Celtin Robertson in May 2014. (Tr. 349). Notes from the visit indicate:

> She has had significant back pain resulting in being awarded disability which she has been on since then. The back pain is located at the central lumbar region, has a throbbing, sharp quality and ranges from 5-10/10 severity. She explains that she has to take analgesics throughout the day in regular intervals (every couple of hours). Otherwise, if she does not take them, the pain progressively worsens to 10/10. With taking analgesics regularly, the

4

> pain stays at about a 5/10 severity. The pain is exaggerated by standing such that she has to sit down after about 30 minutes.
>
> On a typical day she takes care of personal needs. She washes dishes, does the laundry and sweeps. Her significant other takes care of the rest of the household chores. Her landlord takes care of the yard work. In her spare time she watches television or reads.
>
> The claimant has had persistent urinary incontinence since assault with firearm in the lower abdomen 14 years ago. She has no control of the bladder whatsoever and wears a diaper chronically.

(Tr. 349-50).

Dr. Robertson noted that Plaintiff entered the exam room without any assistance, had no difficulty getting on or off the exam table, yet sat with 5/10 back pain. (Tr. 350). Although Plaintiff's gait was normal, "she cannot toe/heel walk due to weakness of the muscle groups of the right foot. She can squat about half way down limited by exacerbation of back pain." (Tr. 351).

Based on this examination, Dr. Robertson concluded that Plaintiff could stand or walk for up to six hours limited by weakness and loss of sensation in the right foot. (Tr. 352). He found no limitation in sitting. (Tr. 352). He opined that Plaintiff could occasionally lift 10-20 pounds limited by difficulty with squatting, forward flexion, weakness, and loss of sensation of the right foot. (Tr. 353). He found no postural limitation except for occasionally climbing stairs due to risk of fall as a result of loss of sensation and weakness of the right foot and occasional stooping due to difficulty with forward flexion and occasional crouching limited by difficulty with squatting. (Tr. 353).

On October 1, 2014 Plaintiff visited Spain Urology for a follow-up visit. (Tr. 382). Review of systems noted a 10-pound weight loss over the past two months with loss of appetite, iron deficiency anemia, and back pain with use of a pack of Goody powder every day for the past five years. (Tr. 382). Plaintiff was advised to return to the clinic in 3 months. (Tr. 384).

Plaintiff went to the McClain Spinal Cord Injury Clinic on November 24, 2014 for management of her neuropathic pain with symptoms "attributed to traumatic spinal cord injury as a result of GSW [gunshot wound] 2000. Bladder incontinence, is unchanged … bowel incontinence is unchanged, controls bowels with colostomy." (Tr. 386). She described her pain as burning, tingling, with radiation, with burning intensity described as an 8/10 with hot stabbing pain. (Tr. 386). Plaintiff was found to have fatigue, weight loss, and poor appetite. (Tr. 386). On review of the musculoskeletal system, it was noted that there was no change over baseline. (Tr. 387). Plaintiff was prescribed Lyrica and directed to return to the clinic in one year. (Tr. 390).

At the September 2015 hearing, Plaintiff testified that she takes over-the-counter pain medication to be able to function with her back pain, amounting to about 6 packs of Goody's or 8-10 Aleve per day. (Tr. 65). While taking pain medication, she reports her pain is a 6/10. (Tr. 66). Constantly standing up makes her pain worse. (Tr. 66). Plaintiff does not have a driver's license because of spasms in her feet which cause her to lose feeling in her right foot. (Tr. 68). She experiences regular UTIs because of her incontinence. (Tr. 73).

### III. ALJ Decision

Where disability has previously been established, the Regulations provide a seven-step process for determining whether a claimant continues to be disabled. 20 C.F.R. §416.994(b)(5)(i-vii). The Commissioner must determine in sequence:

1. Whether the claimant has an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the claimant does, the claimant's disability continues. If not, the evaluation proceeds to step two.

2. Whether the claimant has experienced medical improvement. If the claimant has, the evaluation proceeds to step three; if not, the evaluation proceeds to step four.

3. Whether the claimant's medical improvement is related to her ability to work. If it is, the evaluation proceeds to step five; if not, the evaluation proceeds to step four.

4. Whether an exception under 20 C.F.R. §416.994(b)(3)-(4) applies. If no exception applies, the claimant's disability continues. If an exception in (b)(3) applies, the evaluation proceeds to step five. If an exception in (b)(4) applies, the claimant is not disabled.

5. Whether the claimant has a medically severe impairment or combination of impairments. If the claimant does, the evaluation proceeds to step six; if not, the claimant is not disabled.

6. Whether the claimant is unable to perform any past relevant work. If the claimant is unable to perform past relevant work, the evaluation proceeds to step seven; if not, the claimant is not disabled.

7. Whether the claimant is unable to perform any other work within the national economy. If the claimant is unable to do so, the claimant is disabled; if not, the claimant is no longer disabled.

*Richardson v. Commissioner*, 2017 WL 4366730 at *2 (N.D. Ala. Sept. 29, 2017) (citing 20 C.F.R. § 416.994(b)(5)). The Commissioner's decision is based on the weight of the evidence, with "no initial inference as to the presence or absence of disability being drawn from the fact that [the claimant has] previously been determined to be disabled." 20 C.F.R. § 404.1594(b)(6).

## IV.     Plaintiff's Argument for Remand or Reversal

Plaintiff argues that the final decision of the Commissioner was not based on substantial evidence and improper legal standards were applied. (*See* Pl. Brief, Doc. #10 at 10-14). More specifically, Plaintiff argues that the ALJ omitted from consideration the impairments of neurogenic bladder, colostomy, and incontinence of both bladder and bowel. (*Id.* at 10). For the reasons explained below, the court agrees that this was error and finds that the decision of the Commissioner is due to be reversed and remanded.

## V.     Standard of Review

Judicial review of disability claims under the Act is limited to two questions: (1) whether the record reveals substantial evidence to sustain the ALJ's decision; and (2) whether the correct

7

legal standards were applied. 42 U.S.C. §405(g); *see Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). If the Commissioner's findings are supported by "substantial evidence," they are conclusive. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner. *See id.* (citing *Bloodsworth v. Heckler*, 703 F..2d 1233, 1239 (11th Cir. 1983)). If supported by substantial evidence, the Commissioner's factual findings *must* be affirmed, even if the record suggests otherwise. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (emphasis added). Nevertheless, while the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). Legal standards are reviewed de novo. *Moore*, 405 F.3d at 1211.

**VI.   Analysis**

Prior to beginning the sequential evaluation necessary in cessation of benefits cases, the ALJ properly identified the September 13, 2004 decision as the comparison point decision, which is the most recent favorable decision finding Plaintiff disabled. (Tr. 29). The ALJ found that, at the time of the CPD, Plaintiff had the medically determinable impairment of status post gunshot wound to the pelvis and back, resulting in an inability to sustain work related activities. (Tr. 29). The ALJ determined that Plaintiff did not develop any additional impairment after the CPD through June 1, 2014, with the current impairment the same as the CPD impairment. (Tr. 29). Plaintiff's "status post gunshot wound" was found to be "severe" since June 1, 2014; however,

because the impairment did not meet or equal a Listing, the evaluation continued to the question of medical improvement. (Tr. 29-30).

In cessation cases, "there can be no termination of benefits unless there is substantial evidence of improvement to the point of no disability." *McAulay v. Heckler*, 749 F.2d 1500, 1500 (11th Cir. 1985) (per curiam). "Medical improvement" is defined as "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1). To make the required finding of medical improvement prior to terminating benefits, an ALJ must "evaluate the medical evidence upon which [the claimant] was originally found to be disabled," and compare it with the newer medical evidence. *Vaughn v. Heckler*, 727 F.2d 1040, 1043 (11th Cir. 1984) (per curiam). "Without such a comparison, no adequate finding of improvement c[an] be rendered." *Id.*; *see also Solomon v. Commissioner*, 532 Fed. Appx. 837, 839 (11th Cir. 2013).

Here, the ALJ very briefly "compared" select and limited medical records from the 2004 CPD to the most recent medical records. (Tr. 30). This is, of course, on its face most difficult since neither the CPD *nor* the original decision from 2000 are part of the administrative record. Although the ALJ made some attempt to compare range of motion and ability to ambulate as related to the musculoskeletal system, he failed to compare Plaintiff's reported pain limitations and medication regiment from one time period to the other. (Tr. 30-34). Nor did he compare the "status post gunshot wound" as it related to the neurogenic bladder and colostomy bag. (Tr. 30). And, without any of the original evidence from 2000, and with only limited comparison point evidence from 2004, and no decision in the file from 2004, it was impossible for the ALJ to properly compare the evidence and evaluate whether there had been medical improvement.

*Vaughn*, 727 F.2d at 1043 (finding error when "the ALJ focused only on current evidence of whether [the plaintiff] was disabled"); *McAulay*, 749 F.2d at 1500 (finding that although the ALJ referred to original medical records, "no comparison was made ..." and "the ALJ failed to properly address the issue of improvement ..."); *see also Klaes v. Commissioner*, 499 Fed. Appx. 895, 896–97 (11th Cir.2012) (finding reversible error when "[t]he ALJ did not mention, much less compare, the medical evidence of [the plaintiff's] impairments [predating the disability determination] that was relied upon to make the original ... determination"); *Britton v. Berryhill*, 2017 WL 2455107 at *8 (S.D. Ala. June 6, 2017) ("the medical improvement discussions contain no mention of any of the original evidence upon which Plaintiff was found disabled"); *Olivo v. Colvin*, 2017 WL 708743 at *5 (M.D. Fla. Jan. 30, 2017) ("Here, the ALJ at no point in the Decision discussed or cited the medical evidence predating the CPD.").

Even had the ALJ properly compared the mobility question from one time period to the next, Plaintiff's mobility is but one piece of the proper assessment - it does not alone constitute substantial evidence. *See Lynch v. Astrue*, 358 Fed. Appx. 83, 87 (11th Cir. 2009) ("[T]he evidence must do more than merely create a suspicion of the existence of a fact.") (internal citation omitted). Plaintiff's diagnosis of "status post gunshot wound" also included the impairments of neurogenic bladder and colostomy bag. The ALJ did not consider these impairments despite the requirement to consider all impairments, in combination, to come to a determination on ability to work. *Gibson v. Heckler,* 779 F.2d 619, 622 (11th Cir. 1986) ("Clearly, the ALJ must consider every impairment alleged."); *see also Rodriguez v. Commissioner,* 2017 WL 6498087 at *4 (M.D. Fla. Nov. 30, 2017) ("[I]t appears that the ALJ … may not have properly considered claimant's other past impairments when determining whether medical improvement had occurred following the CPD.").

For these reasons, the ALJ's decision was not based on substantial evidence and improper legal standards were applied.

**VII. Conclusion**

The court concludes that the ALJ's determination that Plaintiff is no longer disabled is not supported by substantial evidence and proper legal standards were not applied in reaching the ALJ's determination. The Commissioner's final decision is due to be reversed and remanded. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this January 31, 2018.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE